IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CAL WILLIAMS,<br><br>      Petitioner,<br><br>vs.<br><br>THOMAS LAVALLEY, Superintendent,<br>Clinton Correctional Facility,<br><br>      Respondent. | No. 9:12-cv-01141-JKS<br><br>MEMORANDUM DECISION |

  Cal Williams, a state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Williams is in the custody of the New York State Department of Corrections and Community Supervision and is incarcerated at the Clinton Correctional Facility. Respondent has answered. Williams has not replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

  Williams and Jesse Turner were charged with three counts of first-degree robbery, eight counts of second-degree robbery, and three counts of third-degree grand larceny stemming from their involvement in three separate bank robberies. Williams and Turner were tried separately. A jury convicted Williams of all counts. The court sentenced Williams to consecutive determinate sentences of 25 years on the three first-degree robbery counts, determinate sentences of 15 years on the eight second-degree robbery counts (five to be served consecutively, and three concurrently with the other sentences), and indeterminate sentences of 3 ½ to 7 years on the three third-degree grand larceny counts to run concurrently with the other sentences. The

1

aggregate sentence of 150 years was reduced by operation of law to an aggregate maximum of 50 years. *See* N.Y. PENAL LAW § 70.30(1)(e)(vi).

Through counsel, Williams directly appealed, arguing that: 1) the verdict was against the weight of the evidence; 2) the sentence was harsh and excessive and illegal as a matter of law; and 3) the trial court erred in denying suppression of the identification of Williams through "suggestive" photo arrays shown to several witnesses. The Appellate Division affirmed in a reasoned opinion.

Williams filed a counseled application for leave to appeal, which the Court of Appeals summarily denied.

On July 3, 2012, Williams timely filed his Petition to this Court.

## II. GROUNDS RAISED

In his *pro se* Petition before this Court, Williams argues, as he did on direct appeal, that: 1) the verdict was against the weight of the evidence; 2) the sentence was harsh and excessive and illegal as a matter of law; and 3) the identification evidence should have been suppressed as one photo array was "suggestive."

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that

contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

Williams did not file a traverse. 28 U.S.C. § 2248 provides:

> The allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true.

Ordinarily, under § 2248, where there is no denial of the Respondent's allegations in the answer, or the denial is merely formal unsupported by an evidentiary basis, the court must accept

Respondent's allegations. *See Carlson v. Landon*, 342 U.S. 524, 530 (1952). Where there is no traverse filed and no evidence offered to contradict the allegations of the return, those allegations must be accepted as true. *United States ex rel. Catalano v. Shaughnessy*, 197 F.2d 65, 66 (2d Cir. 1952) (per curiam).

IV. DISCUSSION

Claim One: Weight of the Evidence

Williams first argues that the verdict was against the weight of the evidence because the testimony of two eyewitnesses was not credible and because there was no evidence that either Williams or Turner displayed a firearm or made any threats.

The Appellate Division rejected Williams's contention to the extent that he preserved this argument for review. The court concluded that the testimony of the eyewitnesses was not incredible as a matter of law, the eyewitnesses were thoroughly cross-examined by defense counsel regarding their ability to identify Williams, and the verdict was not against the weight of the evidence.

Williams's claim that the verdict was against the weight of the evidence is not cognizable on federal habeas review. *McKinnon v. Superintendent, Great Meadow Corr. Facility*, 422 F. App'x 69, 75 (2d Cir. 2011). Rather, the claim derives from New York Criminal Procedure Law § 470.15(5), which permits a New York appellate court to reverse or modify a conviction where it determines "that a verdict of conviction resulting in a judgment was, in whole or in part, against the weight of the evidence." *Mobley v. Kirkpatrick*, 778 F. Supp. 2d 291, 311 (W.D.N.Y. 2011) (quoting N.Y. CRIM. PROC. LAW § 470.15(5)). "[U]nlike a sufficiency of the evidence claim—which at least is dually grounded in federal due process principles—a weight of the

evidence claim is a creature of state law" which fails to raise a federal constitutional issue and "is not cognizable on federal habeas review." *Perez v. Smith*, 791 F. Supp. 2d 291, 303 (E.D.N.Y. 2011); *Garrett v. Perlman*, 438 F. Supp. 2d 467, 470 (S.D.N.Y. 2006) (accord); *see Mobley*, 778 F. Supp. 2d at 311 ("Federal courts routinely dismiss claims attacking a verdict as against the weight of the evidence on the basis that they are not federal constitutional issues cognizable in a habeas proceeding."); *see also Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996) ("assessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on [habeas review]").

Williams does not raise a sufficiency of the evidence claim, nor did he exhaust such a claim on direct appeal. Nevertheless, federal courts in New York have suggested that a petitioner who raises a state law weight of the evidence claim on direct appeal has both raised and exhausted a constitutional sufficiency of the evidence claim for federal habeas purposes. *Wilson v. Heath*, 938 F. Supp. 2d 278, 290-91 (N.D.N.Y. 2013); s*ee Liberta v. Kelly*, 839 F.2d 77, 80 n.1 (2d Cir. 1988); *see also Howie v. Phillips*, No. 03 Civ. 9757, 2004 WL 2073276, at *4 (S.D.N.Y. Sept. 17, 2004) (concluding that a *pro se* petitioner is deemed to have raised a challenge to the legal sufficiency of the evidence by asserting that the verdict was against the weight of the evidence).

As articulated by the Supreme Court in *Jackson*, the constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original); *see McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010) (reaffirming this standard). This

Court must therefore determine whether the New York court unreasonably applied *Jackson*. In making this determination, this Court may not usurp the role of the finder of fact by considering how it would have resolved any conflicts in the evidence, made the inferences, or considered the evidence at trial. *Jackson*, 443 U.S. at 318-19. Rather, when "faced with a record of historical facts that supports conflicting inferences," this Court "must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and defer to that resolution." *Id.* at 326.

It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law. *See Engle v. Isaac*, 456 U.S. 107, 128 (1982). Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must take its inquiry by reference to the elements of the crime as set forth in state law. *Jackson*, 443 U.S. at 324 n.16. A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *see West v. AT&T*, 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . ."). "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) (quoting *Smith v. Philips*, 455 U.S. 209, 221 (1982)) (internal quotation marks omitted). It is through this lens that this Court must view an insufficiency of the evidence claim.

Under *Jackson*, the role of this Court is to simply determine whether there is any evidence, if accepted as credible by the jury, sufficient to sustain conviction. *See Schlup v. Delo*, 513 U.S. 298, 330 (1995). The jury convicted Williams of three counts of first-degree robbery for the February 8, 2006 crime. Under New York Law, a person commits first-degree robbery when he "forcibly steals property and when, in the course of the commission of the crime or of immediate flight therefrom, he . . . displays what appears to be a . . . firearm." N.Y. PENAL LAW § 160.15(4). The jury also convicted Williams of eight counts of second-degree robbery–three counts for the February 8, 2006, crime, three counts for the March 10, 2006, crime, and two counts for the April 25, 2006, crime. In New York, a person commits second-degree robbery where he "forcibly steals property" and "is aided by another person actually present." N.Y. PENAL LAW § 160.10(1). Finally, the jury also convicted Williams of three counts of third-degree larceny, one stemming from each of the before-mentioned crime dates. A person commits third-degree larceny in New York where that person steals property exceeding three thousand dollars in value. N.Y. PENAL LAW § 155.35(1).

With respect to the February 8, 2006, crime, an eyewitness testified that she was at the bank filling out a life insurance policy when she saw a man she later identified as Williams enter with a gun and rob the bank. Williams told her to shut up and held a gun to her head. She and another witness testified that a second man assisted in the crime. The two men forced several bank workers into the ATM room where they were told to face the wall. The taller of the two men took all of the money from the teller line. The two men absconded with more than $30,000. This evidence alone was sufficient to support Williams's convictions for first-degree robbery,

second-degree robbery and third-degree grand larceny stemming from his participation in the February 8, 2006, bank robbery.

With respect to the March 10, 2006, crime, an assistant bank manager testified that a man she identified as Williams entered the bank and announced that "[t]his is a robbery. I have done this before. I am a professional." He approached the teller line and demanded money from the teller. He then demanded that the assistant manager also provide him with money from her cash drawer. Williams was assisted by another man, and together the two men took $10,763. The evidence was therefore sufficient to convict Williams of second-degree robbery and third-degree grand larceny stemming from his involvement in the March 10, 2006, crime.

Lastly, with respect to the April 25, 2006, crime, an eyewitness testified that Williams entered the bank, announced a robbery, and told her to put her hands up. Williams took money from teller drawers and then left with his accomplice. Together they stole $10,322. Again, the evidence is sufficient to support Williams's conviction for second-degree robbery and third-degree grand larceny stemming from his participation in the April 25, 2006, robbery. Williams is therefore not entitled to relief on the ground that there was insufficient evidence to support his convictions.

Claim Two: Harsh and Excessive Sentence

Williams next argues that his sentence was harsh and excessive and illegal as a matter of law. Williams asserts that "[s]ince no weapon was attested to during trial, and robbery elements could not be established . . . and the court failed to even mention rehabilitation facts in its rationale for the sentences, [his] sentence[] should be reduced."

The Appellate Division agreed with Williams that "the aggregate consecutive sentence of imprisonment of 150 years is unduly harsh and severe in light of the absence of any violence or injuries sustained during the robberies." The court concluded, however, that "[b]ecause that aggregate consecutive sentence is reduced by operation of law to an aggregate maximum term of 50 years . . ., we see no reason to modify the sentence."

It is well settled that an excessive sentence claim may not be raised as grounds for habeas corpus relief if the sentence is within the range prescribed by state law. *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992); *Bellavia v. Fogg*, 613 F.2d 369, 373 (2d Cir. 1979) (setting mandatory sentences is solely the province of state legislature); *Hernandez v. Conway*, 485 F. Supp. 2d 266, 284 (W.D.N.Y. 2007) (excessive sentence claim does not present a federal question cognizable on habeas review where the sentence was within the range prescribed by state law). As Respondent notes, the sentences imposed were within the statutory range prescribed for second felony offenders and the aggregate sentence was capped by operation of law at a maximum of 50 years' imprisonment. Williams accordingly cannot prevail on this claim.

Claim Three: Suppression of Identification Evidence Based on Photo Array

Williams lastly argues that the identification evidence should have been suppressed on the ground that the pre-trial investigation procedure was suggestive. Specifically, he asserts that although an eyewitness described the robber as a 5'7" black male in his mid-30's with broad shoulders, the photo array she was shown included six men who were between 5'10" and 6'2" tall, weighed between 180 to 220 pounds, and were between 33 and 41 years old. Williams further argues that the police initially showed the eyewitness nearly 500 photos of various men,

9

and the officer's testimony that he did not know if Williams's photo was in that initial batch was "incredible."

The Appellate Division rejected this contention on direct appeal "[i]n light of the absence of any evidence at the suppression hearing that the police procedures used in creating and presenting photo arrays created a substantial likelihood that [Williams] was singled out for identification."

The admission at trial of identification testimony derived from an impermissibly suggestive photo array may violate a criminal defendant's right to due process. *See United States v. Thai*, 29 F.3d 785, 807-08 (2d Cir. 1994). "In general, a pretrial photographic identification procedure used by law enforcement officials violates due process if the procedure 'is so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misrepresentation.'" *Jarrett v. Headley*, 802 F.2d 34, 40-41 (2d Cir. 1986) (quoting *Simmons v. United States*, 390 U.S. 377, 384 (1968)). "Case law has developed no requirement, however, that photos in an array present only individuals who match petitioner's appearance in every detail." *Velazquez v. Poole*, 614 F. Supp. 2d 284, 300-01 (E.D.N.Y. 2007); *Jarrett*, 802 F.2d at 41 ("It is not required . . . that all of the photographs in the array be uniform with respect to a given characteristic."). Rather, "[d]ifferences among the physical characteristics of individuals in a photo array are constitutionally permissible, provided that they are not significant enough to suggest that the defendant was the culprit." *Velazquez*, 614 F. Supp. 2d at 301; *see United States v. Bautista*, 23 F.3d 726, 731 (2d Cir. 1994).

The Appellate Division's conclusion that the photo array did not create a substantial risk that Williams was singled out as the culprit was not unreasonable or contrary to federal law. All

six of the men shown were African-Americans of similar age, skin, hair and eye color, hairstyles and facial hair. The photos were head shots, and accordingly their heights and weights were not obvious from the photographs or otherwise indicated in the array. Williams is therefore not entitled to relief on this claim. *See Velazquez*, 614 F. Supp. 2d at 301 (finding photo array not unduly suggestive where the array showed men of similar age, complexion, facial hair, eye color and hair color and style); *United States v. Valdez*, No. S1 92 Cr. 76, 1993 WL 14650, at *3 (S.D.N.Y. Jan. 14, 1993) (photo array not unduly suggestive where four of the five men pictured had skin color and facial hair comparable to the defendant).

## V. CONCLUSION

Williams is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a

certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Court of Appeals. *See* FED. R. APP. P. 22(b); 2D CIR. R. 22.1.

The Clerk of the Court is to enter judgment accordingly.

Dated: April 17, 2014.

/s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge